# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3307

_____

Thomas Holder,

                Petitioner,

v.

Alberto Gonzales, Attorney General
of the United States of America,

                Respondent.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Petition for Review of an Order of
the Board of Immigration Appeals.

[PUBLISHED]

_____

Submitted: May 17, 2007
Filed: August 24, 2007

_____

Before MURPHY, HANSEN, and COLLOTON Circuit Judges.

_____

HANSEN, Circuit Judge.

Thomas Holder petitions for review of the final order of removal issued by the Board of Immigration Appeals (the Board). After careful review, we deny the petition.

## I.

Thomas Holder is a Liberian citizen whom the Government charged in 2000 as being removable. On June 13, 2003, an Immigration Judge issued a written order denying Holder's request for voluntary departure and ordering him removed from the United States. Pursuant to the regulations of the Board of Immigration Appeals, Holder had 30 days from this order in which to file a notice of appeal at the Board's offices in Falls Church, Virginia. See 8 C.F.R. § 1003.38(b). Because the 30-day period was set to expire on Sunday, July 13, 2003, Holder had until Monday, July 14, to file his appeal. Id. On Friday, July 11, 2003, Holder sent his notice of appeal via Federal Express overnight delivery. The package was scheduled to be delivered on Monday, July 14, as the Board's offices are closed on weekends.

However, when Holder addressed the package containing the appeal notice, he transposed two numbers in the zip code on the package address label. He used the correct street address, city, and state for the Board's offices in Falls Church, but the zip code was for a different city, Fredericksburg, Virginia. Because of this error, delivery of the package was delayed and Holder's appeal was not delivered to the Board until Tuesday, July 15, 2003, one day past the appeal deadline.

As a result of the untimely filing, the Board determined that it lacked jurisdiction over Holder's appeal and dismissed it. Holder filed a motion for reconsideration with the Board, which was denied, and then filed a petition for review in this court. We remanded the case with instructions to consider whether Holder's appeal was timely based on evidence that he had sent the package via overnight carrier. The Board vacated its prior orders, determined after reviewing the record that the appeal was untimely filed and that Holder had not demonstrated "unique circumstances" justifying acceptance of his untimely appeal, and issued a final order of removal. Holder then filed this petition, contending that the Board erred in finding that his untimely appeal did not demonstrate the type of circumstances that justified

2

use of the Board's procedures certifying jurisdiction to itself. <u>See</u> 8 C.F.R. 1003.1(b). Holder also argues that the Board violated his Due Process rights by its refusal to modify its appeals process to allow for either a mailbox rule for filing or allowing appeals to be filed in locations other than the Virginia office. After careful review, we deny Holder's petition.

## II.

### A. Jurisdiction

Holder first argues that the Board's determination that the appeal was untimely was erroneous because there was evidence that the initial attempt to deliver the package may have been timely. We review the Board's decision "using the substantial evidence standard and will reverse only if 'it would not be possible for any reasonable fact-finder to come to the conclusion'" in question. <u>Shahinaj v. Gonzales</u>, 481 F.3d 1027, 1028 (8th Cir. 2007) (quoting <u>Menendez-Donis v. Ashcroft</u>, 360 F.3d 915, 918 (8th Cir. 2004)). We find that the Board's determination that the notice of appeal was filed on July 15, a day late, is supported by the record. The appeal was delivered on that day by the overnight carrier, and there is no indication that delivery was attempted at the Board's offices on Monday but rejected. The appeal was date-stamped by the Board Tuesday, July 15, making it untimely. The record supports the Board's finding that the notice was untimely filed and that, as a result, the Board lacks jurisdiction over the appeal unless an exception to the regulation can be shown. <u>See</u> <u>Oh v. Gonzales</u>, 406 F.3d 611, 613 (9th Cir. 2005) (holding that the BIA's appeal deadlines are "subject to exceptions in 'rare circumstances' even when the notice of appeal does not actually arrive before the deadline"); BIA Practice Manual, Ch. 3.1(b)(iv), p. 34 (rev. July 30, 2004) (noting that delays in delivery do not affect filing deadlines "except in rare circumstances").

Holder also contends that the Board abused its discretion by determining that there were no "unique circumstances" that justified an exception to the Board's filing regulations and accepting the appeal using the Board's procedures for certifying an appeal despite it being untimely. Oh, 406 F.3d at 613. "'An abuse of discretion occurs if a decision is without rational explanation, departs from established policies, invidiously discriminates against a particular race or group, or . . . fails to consider all factors presented by the alien or distorts important aspects of the claim.'" Ivanov v. Gonzales, 487 F.3d 635, 638 (8th Cir. 2007) (quoting Feleke v. INS, 118 F.3d 594, 598 (8th Cir. 1997)) (alterations in original). After reviewing the record, we find no abuse of discretion. Holder relies heavily on Oh to argue that his case satisfies the unique circumstances exception to the jurisdictional regulations. The Oh case involved an apparent error on the part of the overnight courier, as Oh mailed the notice of appeal via overnight carrier on February 4 with delivery scheduled for February 5, four days prior to the expiration of the appeal period. Oh, 406 F.3d at 612. The package was sent several days in advance of the deadline, yet the overnight courier did not deliver the appeal for approximately three weeks, until February 24. Id. The court in Oh did not itself hold that these facts constituted unique circumstances, however, but remanded the case to the Board to make that determination, because the Board had initially held that it had no ability to take jurisdiction over an untimely appeal. Id. at 613-14.

In addition, while Holder makes much of the fact that he sent the package three days in advance of the due date, he actually sent the package the last business day before it was due, similar to a situation where a package is mailed on a Thursday for overnight delivery to meet a Friday deadline. Holder allowed little to no time for delay within the delivery system he chose. See In re Liadov et al., 23 I&N Dec. 990, 992 (BIA 2006) (holding that slight delays by an overnight couriers are not "rare" circumstances or "extraordinary" events that justify the Board certifying a case to itself when the appeal was untimely, despite the fact it was mailed 48 hours in advance

of the filing deadline via overnight courier and not delivered until the day after the deadline).

There is also no dispute that Holder erred in addressing the package when he transposed two numbers in the zip code, resulting in the package zip code indicating a different city in Virginia than where the Board's offices were located. Any error attributable to the error in the zip code is attributable to Holder, not the mail courier. See BIA Practice Manual, Ch. 3.1(b)(iv), p. 34 (rev. July 30, 2004) (noting in the most recent edition that "[d]elays caused by incorrect postage or mailing error by the sending party do not affect existing deadlines"). The Board's decision–that Holder's appeal, filed on the last business day before it was due and containing an incorrect zip code in the address, did not involve unique circumstances justifying the Board certifying jurisdiction to itself–is not erroneous. See generally, Malak v. Gonzales, 419 F.3d 533, 535 (6th Cir. 2005) (noting that the Board's Practice Manual "emphasizes that postal or delivery delays do not affect existing deadlines, and parties should anticipate any delay," even if the filing is made through an overnight or guaranteed delivery service) (internal marks omitted), cert. denied, 126 S. Ct. 2360 (2006).[1]

---

[1]We need not decide whether the Supreme Court's recent decision in Bowles v. Russell, 127 S. Ct. 2360, 2366 (2007) (holding that because the authority for extending the notice-of-appeal period was statutory under 28 U.S.C. § 2107(c), the time limit was jurisdictional, and the court of appeals therefore lacked jurisdiction to consider whether "unique circumstances" warranted a waiver of the filing period), applies to this case. See Khan v. U.S. Dep't of Justice, No. 06-2995, 2007 WL 1976151 (2d Cir. July 10, 2007) (discussing Bowles in the context of an immigration appeal). A conclusion that the regulatory filing requirement is jurisdictional pursuant to Bowles would have resulted in a dismissal of the administrative appeal at the BIA level, which is the outcome reached below, and concerning which we have denied review.

B. Due Process

Holder asserts that the Board's regulations regarding timing and delivery of appeals violated his due process rights. He contends that the Board should amend its regulations to allow for notices of appeal to be delivered to and accepted at designated locations across the country, not solely at the Board's offices in Virginia, or that a mailbox rule should apply such that notices of appeal should be deemed filed upon mailing.

"[T]he procedures employed on appeal must provide appellants with due process of law." Talamantes-Penalver v. I.N.S., 51 F.3d 133, 135 (8th Cir. 1995). In Talamantes-Penalver, we reviewed a similar claim, that the ten-day filing period for a notice of appeal, in effect at that time, was a due process violation for those too "remote" from the filing location. Id. At the time of that appeal, the Board's regulations required that a notice of appeal be filed within ten days of the Immigration Judge's order at one of several various designated locations. Id. at 134-35 n.1. Talamantes-Penalver had ten days to get the notice of appeal and the receipt of payment of the filing fee from St. Paul, Minnesota, to Chicago, Illinois. Id. at 134. We held that there was no due process violation by the Board's requirement that appeals reach the filing office within ten days. Id. at 135. We analyzed that case using the factors set forth in Mathews v. Eldrige, 424 U.S. 319 (1976), and we do so again in this case. In doing so, we look at the claimed "individual interest at stake; the risk of erroneous deprivation of the interest through the use of the procedure in question, the value of different or supplemental procedural safeguards; and the interest of the government in using the current procedures, considering the burdens and costs of implementing a different procedure." Talamantes-Penalver, 51 F.3d at 135.

While the Board's appeal regulations have changed since Talamantes-Penalver, the basic analysis remains sound. No due process violation occurs by requiring a notice of appeal to be filed within thirty days at the Board's office in Virginia. The

availability of overnight couriers and priority mail makes delivery methods available nationwide, and the Board's procedures for accepting even untimely notices of appeal based on individual unique circumstances bring this regulation within constitutional requirements. While we noted that a ten-day filing period might be unconstitutional in certain circumstances, allowing 30 days for a notice of appeal to be delivered from anywhere in the nation to one central location is not a due process deprivation, considering the breadth of mailing options available, the relatively low risk of erroneous deprivation, and the burdens of implementing other procedures. Id. at 136.[2]

We also see no constitutional need to require that local filing be an option for filing a notice of appeal. The 30 days allowed by the regulations allow sufficient time to fill out the brief form required by the Board, send it, and have it arrive in the Board's office by the required date. In different circumstances, such as if the time to file an appeal was much shorter, local filing might be a required option to avoid infringing on an alien's due process rights. See id., at 136 & n.3. However, local filing would place a much larger burden on the Board if it is attempting to process in its offices in Virginia the notices of appeal filed in multiple locations across the country. The filing deadlines and regulations set forth by the Board implementing its appeal procedures are rationally related to a legitimate governmental interest. The fact that other alternatives to the filing regulations may be available does not mean that those in place violate Holder's due process rights. See Gunderson v. Hvass, 339 F.3d 639, 644 (8th Cir. 2003) (noting that the government restriction in question need not be the least restrictive alternative providing that it was rationally related to a legitimate governmental interest), cert. denied, 540 U.S. 1124 (2004).

---

[2]We note that the highest court in this country, the United States Supreme Court, has one central location where petitions for certiorari must be filed, no matter from what state or territory the petition originates. While the Supreme Court has a 90-day filing period, the substantive requirements for filing a petition for certiorari are much more involved than those for filing a simple, uncomplicated notice of appeal with the Board.

In Talamantes-Penalver, we rejected the contention that a mailbox rule should be placed into effect by the Board in order to address an alleged due process violation. 51 F.3d at 137. We stated that this postmark or mailbox rule "would not give sufficient notice to the IJ or the INS that a deportation order is being appealed, as a notice properly postmarked (and thus deemed filed) might never reach its destination." Id. at 136. In addition, we noted that "it is not the province of the judiciary to dictate to an administrative agency the nuts and bolts of what constitutes a 'filing'." Id. at 137. That statement holds true today. The Board's regulations have deemed a filing to be complete when it is received at the Board's offices, a regulation that we hold does not violate Holder's due process rights.

C. Equal Protection

Holder further alleges a violation of his constitutional equal protection rights, claiming that the requirement that notices of appeal be filed only in Virginia improperly favors filers who reside in that area over others throughout the country. Even if we assume that the regulation creates such a classification, there is no violation of Holder's equal protection rights. Non-Virginians are not a suspect class, and the regulation is subject to rational review, meaning that the regulation is constitutional so long as it is reasonably related to a legitimate government interest. See Geach v. Chertoff, 444 F.3d 940, 946 (8th Cir. 2006) (analyzing equal protection claim affecting aliens using rational basis test); Costner v. United States, 720 F.2d 539, 541 (8th Cir. 1983) (explaining rational basis test). The regulation in question is reasonably related to the Board's interest in efficiently regulating the nationwide appeal process. See Henne v. Wright, 904 F.2d 1208, 1215 (8th Cir. 1990) (stating that one of the legitimate state interests the law in question rationally furthered was the "state's interest in inexpensive and efficient record keeping"), cert. denied, 498 U.S. 1032 (1991); Costner, 720 F.2d at 542 (noting that when the test is rationality, the Equal Protection Clause is not violated "merely because the classifications made

by [the state's] laws are imperfect") (internal marks omitted). There was no violation of Holder's equal protection rights.

## III.

Accordingly, we deny the petition for review.

_____